IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIAM THOMAS BAUBERGER,       )
                                )
                Petitioner,     )
                                )
        v.                      )            1:08cv15
                                )
GRADY J. HAYNES, Supt. of       )
Warren Correctional Inst.,      )
                                )
                Respondent.     )


**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

On October 27, 2009, this court entered a Judgment implementing its Memorandum Opinion and Order ("Judgment") adopting the Recommendation of the United States Magistrate Judge to grant the habeas petition of William Thomas Bauberger ("Bauberger") and to require his release unless Respondent (the "State") grants a retrial on the second-degree murder charge within a reasonable time. The State has appealed the Judgment and moved this court to stay, pending appeal, that portion directing the State to release or timely retry Bauberger. (Doc. 23.) At a hearing on January 27, 2010, this court ruled orally that it would grant the motion to stay pending appeal and directed Bauberger, who indicated he intended to seek his release during the appellate process, to file an appropriate motion so that the court could address both matters together.

Bauberger has now filed his motion for release (Doc. 32), which has been fully briefed. For the reasons that follow, the State's motion to stay this court's Judgment is granted, and Bauberger's motion to be released pending appeal is denied.

## I. BACKGROUND

Bauberger was convicted of second-degree murder and assault with a deadly weapon inflicting serious injury based on a drunk driving crash arising from his consumption of in excess of ten beers over the course of approximately five hours at a February 3, 2002, Super Bowl party. On his way to visit a friend after the party, Bauberger drove the wrong way down a freeway exit ramp (driving 55 m.p.h. and accelerating) and collided with a car driven by William Foy, killing Foy's wife.

Bauberger conceded guilt as to the involuntary manslaughter charge, a lesser-included offense to the charge of second-degree murder, and thus the principal issue for the jury was whether the state proved that he acted with malice for a second-degree murder conviction. The state presented substantial evidence of malice, including that Bauberger engaged in the following: (1) admitted to driving with a blood alcohol level of .20 on the night of the crash; (2) had at least two prior convictions for Driving While Intoxicated ("DWI") -- one of which was approximately thirty days prior to this incident -- as well as other driving offenses such as reckless driving; (3) disregarded

2

"Do Not Enter" and "Wrong Way" road signs and other warnings on the night of the crash; (4) disregarded prior court orders not to drive; (5) drove that night despite having had his license revoked; and (6) acted in a profane manner to emergency personnel and others at the scene of the crash.

During its deliberations, the jury sought guidance from the court on the definition of "malice" contained in the court's second-degree murder instruction.[1]  Over the lunch period, the foreperson checked out a copy of Webster's New Collegiate Dictionary from a local library and shared with all jurors the definition of several of the terms comprising the trial court's instruction on "malice," including the dictionary's definition of "recklessly" as "lack of due caution." (Doc. 7, Ex. 4 at 2.) Approximately two hours later, the jury reported it was deadlocked on one charge (presumably the more difficult charge of second-degree murder).  Following encouragement by the trial judge, it subsequently reported it had moved to 10 to 2.  Just over one hour later, it returned a verdict finding Bauberger

---

[1]  The trial court instructed the jury as follows:

> Malice is a necessary element which distinguishes second degree murder from manslaughter.  Malice arises when an act which is inherently dangerous to human life is intentionally done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.

(Doc. 3, Ex. 3, Tr. Vol. IV at 38.)

guilty of second-degree murder and assault with a deadly weapon inflicting serious injury.

Following the verdict, the court was informed that the jury may have consulted a dictionary during its deliberations. Bauberger sought relief in a state court motion for appropriate relief, which was denied. The North Carolina Court of Appeals affirmed in a 2 to 1 opinion, State v. Bauberger, 176 N.C. App. 465, 626 S.E.2d 700 (2006), and the North Carolina Supreme Court split 3 to 3, effectively affirming the lower court decision, State v. Bauberger, 361 N.C. 105, 637 S.E.2d 536 (2006). Having been unsuccessful in his appeals, Bauberger sought relief in this court. On October 27, 2009, this court adopted the Magistrate Judge's Recommendation that the petition be granted. Bauberger v. Haynes, 666 F. Supp. 2d 558 (M.D.N.C. 2009).

The State has filed notice of appeal and seeks to stay enforcement of the court's Judgment. Bauberger opposes the stay request and moves in the alternative to be released, with or without surety, during the appeal.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Appellate Procedure 23(c) provides that, when the State appeals a decision granting habeas corpus, the habeas petitioner "must" be released from custody "unless the court or judge rendering the decision . . . orders otherwise."

4

Fed. R. App. P. 23(c).  In making the decision, the court is to be guided by the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987).  Additional factors include the defendant's risk of flight, any danger to the community if he is released, and the State's interest in continuing custody and rehabilitation pending final determination of the case on appeal where the remaining time of incarceration remains lengthy.  Id. at 777-78.

The Supreme Court has made clear that Rule 23(c) "undoubtedly creates a presumption of release," but it can be overcome if "the traditional stay factors tip the balance against it" and thus "the judge rendering the decision, or an appellate court or judge, 'otherwise orders.'"  Id. at 774, 777. "Where the State establishes that it has a strong likelihood of success on appeal or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the stay analysis militate against release."  Id. at 778.  The same factors that govern this court's inquiry as to the custody determination also guide it as to the separate issue whether to

grant a stay, id. at 777, though they are independent determinations.

### 1. Likelihood of Success on the Merits

The first factor is whether the State can make a "strong showing that [it] is likely to succeed on the merits." Id. at 776. This factor requires that the very district court that has granted the habeas petition conduct a disinterested analysis of the appellant's arguments and candidly reassess its own ruling. To be sure, the grant of a habeas petition does not foreclose the court's finding of a strong likelihood of success, or alternatively a substantial case, on the merits.

In this case, the State argues that "there is no clearly established Supreme Court precedent requiring reversal of a state court conviction based on juror dictionary reading, any potential error was non-prejudicial or harmless, and Petitioner's juror dictionary reading claim is Teague[2] barred." (Doc. 24 at 3.) After careful review, the court continues to conclude that the State's arguments fail.

---

[2] Teague v. Lane, 489 U.S. 288 (1989), effectively bars habeas courts from announcing or applying new rules of constitutional law, absent limited exceptions. See Weeks v. Angelone, 176 F.3d 249, 263 (4th Cir. 1997), aff'd, 528 U.S. 225 (2000). The Supreme Court has since explained that, under Teague, a federal court "will not disturb a final state conviction or sentence unless it can be said that a state court, at the time the conviction or sentence became final, would have acted objectively unreasonably by not extending the relief later sought in federal court." O'Dell v. Netherland, 521 U.S. 151, 156-57 (1997).

Though the State correctly observes that the Supreme Court has not specifically held that a jury's use of a dictionary is an extrinsic influence (Doc. 14 at 8), for habeas purposes "the relevant Supreme Court precedent need not be directly on point, but must provide a 'governing legal principle' and articulate specific considerations for the lower courts to follow when applying the precedent." Quinn v. Haynes, 234 F.3d 837, 844 (4th Cir. 2000) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)); see Panetti v. Quarterman, 551 U.S. 930, 953 (2007) ("That the standard is stated in general terms does not mean the application was reasonable. [The statute] does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'"); Lockyer v. Andrade, 538 U.S. 63, 76 (2003) ("Section 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced."); see also Williams, 529 U.S. at 382 (Stevens, J., concurring) ("[R]ules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than as a bright-line rule.").

The Supreme Court has clearly established that an extrinsic influence on a jury's deliberations violates a defendant's Sixth and Fourteenth Amendment rights to an impartial jury, to

confront witnesses against him, and to be present at all critical stages of his trial.  See, e.g., Tanner v. United States, 483 U.S. 107, 117-18 (1987) (noting the distinction between "external" influences, such as a juror reading a newspaper or hearing prejudicial statements from others, and "internal" influences); Rogers v. United States, 422 U.S. 35, 38-40 (1975) (finding that trial judge's failure to notify and consult the defendant and counsel before responding to the jury's note effectively requesting further instructions violated the defendant's Sixth Amendment right to be present at every stage of trial); Parker v. Gladden, 385 U.S. 363, 364-66 (1966) (finding that a bailiff's statement to jurors that the defendant was a "wicked fellow" and "guilty" constituted an "outside influence" that violated the defendant's Sixth Amendment right to fair trial and confrontation because "the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel"); Turner v. Louisiana, 379 U.S. 466, 473 (1965) (finding a violation of defendant's Sixth Amendment rights where two deputies who testified against him were assigned to guard, and fraternized with, the jury); Remmer v. United States, 347 U.S. 227, 229 (1954) (stating that "private communication, contact, or tampering" with the jury is presumptively

prejudicial); <u>Mattox v. United States</u>, 146 U.S. 140, 149 (1892)
(stating that "in capital cases [] the jury should pass upon the
case free from external causes tending to disturb the exercise
of deliberate and unbiased judgment").[3]

That these principles are so ingrained in our jurisprudence
is evidenced by the fact that their application by appellate
courts on habeas review has become nearly routine. <u>See</u>, <u>e.g.</u>,
<u>Oliver v. Quarterman</u>, 541 F.3d 329, 334-40 (5th Cir. 2008)
(noting that "the Supreme Court has clearly established a
constitutional rule forbidding a jury from being exposed to an
external influence"); <u>United States v. Williams-Davis</u>, 90 F.3d
490, 502-03 (D.C. Cir. 1996) (considering juror's resort to
dictionary to determine "enterprise" in racketeering case
extrinsic but finding it not prejudicial based on facts of
case); <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1189-91 (9th Cir.
1993) (recognizing as extrinsic -- and finding prejudice under
<u>Brecht</u> analysis -- conduct where one juror informed another

---

[3]  <u>See</u> <u>also</u> <u>Turner</u>, 379 U.S. at 472 (stating that "[t]he requirement
that a jury's verdict 'must be based upon the evidence developed at
the trial' goes to the fundamental integrity of all that is embraced
in the constitutional concept of a trial by jury" and therefore "[i]n
the constitutional sense, trial by jury in a criminal case necessarily
implies at the very least that the 'evidence developed' against a
defendant shall come from the witness stand in a public courtroom
where there is full judicial protection of the defendant's right of
confrontation, of cross-examination, and of counsel"); <u>Patterson v.
Colorado</u>, 205 U.S. 454, 462 (1907) (noting that "[t]he theory of our
system is that the conclusions to be reached in a case will be induced
only by evidence and argument in open court, and not by any outside
influence, whether of private talk or public print").

juror that defendant was a convicted armed robber); United States v. De La Vega, 913 F.2d 861, 869-71 (9th Cir. 1990) (recognizing that jury foreman's consultation of book What You Need to Know for Jury Duty from public library, and sharing with jurors, was an extrinsic influence under Turner, supra, that required analysis for prejudice); Stockton v. Virginia, 852 F.2d 740, 743-46 (4th Cir. 1988) (finding restaurant owner's comment to jurors during sentencing phase that "they ought to fry the son-of-a-bitch" violated nearly century-old Supreme Court precedent forbidding private communications with jurors); Marino v. Vasquez, 812 F.2d 499, 504-07 (9th Cir. 1987) (finding jury's consultation of dictionary for definition of "malice" in criminal case an improper extrinsic influence under "well-settled" precedent, which the court found prejudicial under pre-Brecht standard); cf. McNeill v. Polk, 476 F.3d 206, 226 (4th Cir. 2007) (King, J., concurring in part and concurring in the judgment) (stating that juror's use of his home dictionary to determine meaning of "mitigate" was contrary to "clearly established Supreme Court case law" and "constituted an external, rather than internal, influence").[4]

In this case, the jury's resort to a dictionary to determine the definition of "reckless" -- a key component term

---

[4]    In McNeill, the court avoided the issue of whether consultation of the dictionary was external and prejudicial, finding instead that the claim was procedurally defaulted because the affidavits in support contained hearsay and were inadmissible.  476 F.3d at 214.

of the element of "malice" it was charged to consider -- was manifestly an external influence that the North Carolina Court of Appeals failed to analyze. See State v. Bauberger, 176 N.C. App. 465, 468-73, 626 S.E.2d 700, 703-06 (2006) (concluding that state case law prohibited the court from considering as extrinsic the evidence that the jury relied on a dictionary).

Under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), and O'Neal v. McAninch, 513 U.S. 432, 436 (1995), and considering the evidentiary limitations on examining jurors on the effect such juror misconduct has on deliberations, see Fed. R. Evid. 606(b); Sherman v. Smith, 89 F.3d 1134, 1138 (4th Cir. 1996) (en banc), there is at least "grave doubt" as to the harmlessness of the error in this case. See Fullwood v. Lee, 290 F.3d 663, 679 (4th Cir. 2002) (applying Brecht and O'Neal standard to juror misconduct claim). This is particularly true in light of evidence that the jury struggled with the second-degree murder decision: it sought specific guidance on the definition of "malice," reported it was deadlocked two hours later, and following the trial court's Allen-type charge eventually moved from a 10 to 2 vote to a conviction within two hours. See Williams-Davis, 90 F.3d at 502 (noting that "[o]bviously where the word is critical to a necessary determination, a finding of prejudice is likely" and citing Vasquez, 812 F.2d at 505-06, where jurors looked up "malice" in a murder case).

Finally, the dictionary reading claim was not barred by *Teague* because there is no requirement that there be granular specificity on a factually-identical scenario in order to apply existing Supreme Court precedent. See *Teague*, 489 U.S. at 302 ("[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.") (emphasis in original); *Weeks*, 176 F.3d at 263; see also *Fields v. Brown*, 431 F.3d 1186, 1194 (9th Cir. 2005) (stating in dicta that "extraneous matters such as the conversations that [the juror] had with his wife during trial clearly are not *Teague*-barred because extrinsic information has long since implicated the constitutional right to a fair trial," citing *Remmer*, *supra*). For the reason noted above, the court concludes that existing Supreme Court precedent long predating the North Carolina Court of Appeals' decision in Bauberger's case indicated that the jury's dictionary use was an extrinsic influence implicating Bauberger's Sixth Amendment right to a fair trial. The court therefore finds that the State has not made a strong showing it is likely to succeed on the merits of its appeal.

To conclude that the State has failed to establish a strong likelihood of success on appeal does not mean that it cannot demonstrate a "substantial case on the merits." The latter standard requires the presentation of a "serious legal question"

as well as the balance of equities weighing heavily in the movant's favor. O'Bryan v. Estelle, 691 F.2d 706, 708 (5th Cir. 1982) (cited by Hilton, 481 U.S. at 778); see also Foster v. Gilliam, 515 U.S. 1301, 1303 (1995) (granting, in capacity as circuit justice, stay of release on grounds of substantial case on merits). One court has articulated the test as requiring at least a "plausible" appellate position that is at least colorable. Hernandez v. Dugger, 839 F. Supp. 849, 853 (M.D. Fla. 1993); see also Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1982) (cited by Hilton, 481 U.S. at 778, and noting that "[i]f a movant were required in every case to establish that the appeal would probably be successful, the Rule would not require as it does a prior presentation to the district judge whose order is being appealed" and who "has already decided the merits of the legal issue").

Applying such a standard, the court cannot say that the State fails to present a serious legal question for appellate review. In Robinson v. Polk, 438 F.3d 350, 364 (4th Cir. 2006), the Fourth Circuit, in finding a Bible not an external influence on the jury, observed that the line between external and internal is a "fine one, and one that may even blur upon close inspection."[5] Moreover, if this court is wrong about its

---

[5]    In Robinson the Fourth Circuit stated:

analysis as to the prejudice issue, it acknowledges the State's strong evidentiary record of guilt.[6]  Therefore, the court finds that the State has raised a substantial case on the merits.

Having made that showing, the State can seek continued custody if it can demonstrate that the second and fourth factors militate against release.  Hilton, 481 U.S. at 778.

### 2.    Irreparable Injury Absent a Stay

The State contends that, given the length of an appeal, the failure to grant a stay will force it into a "Catch-22" of granting a new trial that may thereby moot its own appeal, or declining to retry Bauberger and thereby rest its fortunes

---

Under clearly established Supreme Court case law, an influence is not an internal one if it (1) is extraneous prejudicial information; *i.e.,* information that was not admitted into evidence but nevertheless bears on a fact at issue in the case, see Parker, 385 U.S. at 364, 87 S. Ct. 468; Turner, 379 U.S. at 473, 85 S. Ct. 546, or (2) is an outside influence upon the partiality of the jury, such as "private communication, contact, or tampering ... with a juror," Remmer, 347 U.S. at 229, 74 S. Ct. 450.

438 F.3d at 363.

[6]  The practical challenge for the State is formidable.  "'[G]rave doubt' exists when, in the relevant circumstances, the question is so evenly balanced that the reviewing court finds itself in 'virtual equipose' [sic] on the harmlessness issue."  Barbe v. McBride, 521 F.3d 443, 461 (4th Cir. 2008); Fullwood, 290 F.3d at 679; accord O'Neal, 513 U.S. at 435.  The test is whether it can be said with fair assurance that not a single juror's decision was swayed by resort to the extrinsic influence of the dictionary.  See Parker, 385 U.S. at 366 (holding that a defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors"); Lawson v. Borg, 60 F.3d 608, 613 (9th Cir. 1995) ("[E]ven a single juror's improperly influenced vote deprives the defendant of an unprejudiced, unanimous verdict.").  Here, all twelve jurors were exposed to the dictionary definitions.

solely on the appeal. If the State were to grant a new trial, it contends, it cannot "undo" the results should the appeal prove successful before a second verdict. It concludes that being forced to proceed with retrial will thus cause irreparable harm.

Bauberger argues that the State should not be heard to complain of the consequences of its decision to appeal. Moreover, he contends, the argument that the State's appeal would be mooted absent a stay could be made as a matter of course in every case where habeas relief is granted and would consequently frustrate the clearly recognized presumption in favor of release. In any event, Bauberger argues, the conviction is constitutionally infirm, and he can be returned to the custody of the North Carolina Department of Corrections to serve out the remainder of his sentence if it is re-imposed by retrial or on appeal.

The court agrees with the State that, absent a stay, it will suffer irreparable harm, because it is highly unlikely that an appeal could be completed by the time it would have to retry the case. If it loses on retrial, the State will lose a conviction it may otherwise have sustained on appeal. For this reason, the court concludes that this factor weighs in favor of the State as to the stay.

As to release, the State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is "strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." Hilton, 481 U.S. at 777. Bauberger was sentenced on August 15, 2003, to (1) 189 to 236 months on the second-degree murder conviction and (2) a suspended sentence of 29 to 44 months on the assault with a deadly weapon inflicting serious injury conviction, with the sentences to run consecutively. Thus, based on a credit of 557 days for imprisonment before the Judgment as well as time served to date, Bauberger has approximately 91 to 138 months left to serve (about half his sentence) if the conviction is upheld. This factor weighs in favor of the State for continued custody.

### 3. Substantial Injury to Other Interested Parties

Bauberger rightly points out that this court has found his conviction constitutionally infirm, and he contends that every day of continued imprisonment violates the Constitution. Unless he is released now, he argues, his detention may be extended by layers of appeals should the State continue litigating the claim by petitioning for rehearing, rehearing en banc, and a writ of *certiorari*. He finally argues that there is "great uncertainty" whether the State can prove the element of malice necessary to

convict on any retrial, which should militate in favor of release.

The State argues that Bauberger will not be substantially impaired pending appeal. It points to its belief that it is likely to succeed on appeal, as well as to the strength of the evidence against him on retrial.

"The interest of the habeas petitioner in release pending appeal [is] always substantial. . . ." Hilton, 481 U.S. at 777. It is tempered, however, by the other factors of the particular case. Id. at 777-78. To the extent Bauberger argues that uncertainty as to the State's ability to prove malice on retrial militates in favor of his release, it is noteworthy that his conviction was invalidated not because of an evidentiary insufficiency or the improper admission of critical evidence of guilt that must be excluded on retrial. Rather, the error affected the integrity of the jury's deliberative process by permitting it to consider an improper source, and thus lesser standard, for assessing guilt for murder -- one on which the parties were never given the opportunity to comment. The issue is one of prejudice, which this court has found under Brecht.

Contrary to Bauberger's claim, there is extensive evidence upon which a properly instructed jury could find second-degree murder. There was evidence that, despite having been warned and ordered not to drive drunk, Bauberger purposefully broke the law

in causing Mrs. Foy's death. He had two prior DWI convictions, one of which was a mere *thirty days* before the wreck. At the time of the wreck, he knew that his license had been revoked because of his prior drunk driving and that his operation of a motor vehicle, even sober, would be illegal. Nevertheless, and consistent with evidence that he disregarded other previous court orders not to drive, he drove to a party, consumed over ten beers, and drove again with a blood alcohol level more than *twice* the legal limit. While intoxicated, Bauberger disregarded plainly visible road signs and other warnings and, while driving the wrong way on a freeway exit ramp, collided head-on with another vehicle. His level of intoxication was demonstrated by his glassy-eyed appearance and profane manner with emergency personnel and others at the scene of the crash. Bauberger was not granted pretrial release, and the State has been adamant in this court that if it is unsuccessful on appeal it intends to retry him.

Despite having initially raised the issue, Bauberger in his response retreats from his evidentiary-based claim by challenging any consideration of success on retrial because (1) the Fourth Circuit has not adopted such an approach and (2) he asserts his presumption of innocence until the completion of a constitutionally valid retrial. Neither of these arguments is persuasive. First, the presence of overwhelming evidence for

retrial has been considered when making a release determination. See Walberg v. Israel, 776 F.2d 135, 136 (7th Cir. 1985) (noting that "there is no reason to suppose that the state cannot retry him in an error-free trial and convict him, since the evidence of his guilt is, as we remarked in our opinion, overwhelming"). Second, Bauberger's presumption of innocence at retrial does not mandate his release at the current time. Even after the grant of a writ of habeas corpus, petitioners can be denied release pending appellate review of that grant. See, e.g., Foster, 515 U.S. at 1303; Falconer v. Lane, 905 F.2d 1129, 1137 n.6 (7th Cir. 1990) (staying on appeal district court's order granting release). Indeed, the Supreme Court has stated that "a successful habeas petitioner is in a considerably less favorable position than a pretrial arrestee . . . to challenge his continued detention pending appeal." Hilton, 481 U.S. at 779.

In considering all of the above, the court concludes that this factor does not weigh in favor of Bauberger at this time. Further, there are mechanisms for periodic reassessment of this decision to avoid Bauberger's concern of a fixed decision pending interminable appeals. If he prevails in the Fourth Circuit, he will be free to apply for release pending any retrial; he may also petition the court of appeals to modify this court's order in the meantime. Fed. R. App. P. 8(a)(2), 23(b) & (c).

### 4. Public Interest

Finally, the court should consider the public interest. Hilton, 481 U.S. at 777. Factors include whether the defendant is a flight risk, any danger he poses to the public if released, and the State's interest in continued custody until the appeal is resolved. Id. at 777-78.

The State argues that it has a strong interest in the continued custody of Bauberger, who is a "convicted felon" and a danger to the community. Bauberger argues that he has served approximately half of what this court has concluded is a constitutionally infirm conviction and has been imprisoned more than five years longer than he could have been for involuntary manslaughter. He denies that he poses any threat to society and characterizes Ms. Foy's death as the result of an "accident" and not "typical, intentional criminal behavior." (Doc. 27 at 11.) In support of his bid for release, he submits the affidavit of his brother, a physician with whom Bauberger proposes to live in New Jersey pending appeal; the brother vows to endeavor to keep him away from alcohol. (See Doc. 33, Ex. 1 at ¶ 2.) Finally, in tacit recognition of Bauberger's continuing challenge, his brother proposes to prescribe a medication that "acts as a negative deterrent to alcohol consumption." (Id.)

The court concludes that Bauberger understates the severity of his conduct and continues to pose a danger to the community.

Every indication is that he is an alcoholic who is unable to control his drinking and driving. He has made conscious choices to drive while intoxicated, even in the face of court orders and following revocation of his license, and thus continues to pose a danger to the community. These factors served to deny him pretrial release and, in light of the record and the State's representation that it intends to retry the case if its appeal is unsuccessful, they continue to have force. Significant time remains on his sentence and, as noted earlier, the State therefore has a substantial interest in his continued custody. Release to his brother's custody, especially out of the district and state, is not warranted on this record. The public interest thus favors the State.

## III. CONCLUSION

After careful consideration, the court finds that the State has demonstrated that enforcement of the court's Judgment should be stayed pending appeal but that Bauberger should not be released at this time.

IT IS THEREFORE ORDERED that the State's motion for stay pending appeal (Doc. 23) is GRANTED.

IT IS FURTHER ORDERED that Bauberger's motion for release pending appeal (Doc. 32) is DENIED.

\_\_\_\_/s/\_\_\_\_Thomas D. Schroeder\_\_\_\_
United States District Judge

March 17, 2010